UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEANNA N. BRIDGES,

                    Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

                    Defendant.

_____/

Case No. 09-10117

John Corbett O'Meara
United States District Judge

Michael Hluchaniuk
United States Magistrate Judge


**REPORT AND RECOMMENDATION
CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 10, 13)**


I.    **PROCEDURAL HISTORY**

       A.    Proceedings in this Court

       On January 12, 2009, plaintiff filed the instant suit seeking judicial review of

the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant

to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge John Corbett

O'Meara  referred this matter to the undersigned for the purpose of reviewing the

Commissioner's decision denying plaintiff's claim for a period of child's insurance

benefits.  (Dkt. 3).  This matter is currently before the Court on cross-motions for

summary judgment.  (Dkt. 10, 13, 14).

B.    Administrative Proceedings

Plaintiff filed the instant claims on December 20, 2005, alleging disability as of July 1, 2004.  (Dkt. 9, Tr. at 66-70).  The claim was initially disapproved by the Commissioner on March 30, 2006.  (Dkt. 9, Tr. at 54-57)).  Plaintiff requested a hearing and on July 10, 2008, plaintiff appeared with counsel before Administrative Law Judge (ALJ) Henry Perez, Jr., who considered the case *de novo*.  In a decision by the Appeals Council dated August 22, 2008, the ALJ found that plaintiff was not disabled.  (Dkt. 9, Tr. at 16-26).  Plaintiff requested a review of this decision on September 15, 2008.  (Dkt. 9, Tr. at 11).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on November 13, 2008, denied plaintiff's request for review.  (Dkt. 9, Tr. at 6-10); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

## II.    STATEMENT OF FACTS

A.    ALJ Findings

Plaintiff was 24 years of age at the time of the most recent administrative hearing.  (Dkt. 9, Tr. at 387).  Plaintiff's relevant work history included approximately two years as a fast food cashier.  *Id.*  In denying plaintiff's claims, defendant Commissioner considered a history of asthma, a depressive disorder, an intermittent explosive disorder and a history of poly-substance abuse and alcohol abuse as possible bases of disability.  (Dkt. 9, Tr. at 18).

The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since July 1, 2004. (Dkt. 9, Tr. at 18). At step two, the ALJ found that plaintiff's impairments were "severe" within the meaning of the second sequential step. *Id.* At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Dkt. 9, Tr. at 19). At step four, the ALJ found that plaintiff had no past relevant work. (Dkt. 9, Tr. at 24). At step five, the ALJ denied plaintiff benefits because plaintiff could perform a significant number of jobs available in the national economy. (Dkt. 9, Tr. at 25-26).

B.    Parties' Arguments

1.    Plaintiff's claims of error

Plaintiff argues that the ALJ never took into account that her "excellent" treatment response was in a highly supportive environment and that there was no evidence that she ever returned to "a baseline level of functioning within a 12 month period" as the ALJ concluded in his decision. (Tr. 21). Further, according to plaintiff, the sole basis for the ALJ's decision was the psychiatric consultative examinations. In February 2005, the first examination by Basivi Baddigam, M.D. took place and plaintiff was diagnosed with intermittent explosive disorder, rule out antisocial personality disorder, and a GAF of 70. Dr. Baddigam determined

that she was "superficially cooperative" and her prognosis was "guarded." (Tr. 316-317). According to plaintiff, this consultative examination was conclusory and there was never any explanation nor substantial evidence for those conclusions drawn by Dr. Baddigam. In February 2006, the second psychiatric consultative examination was conducted by Sung-Ran Cho, M.D. and plaintiff was diagnosed with polysubstance abuse disorder, dysthymic disorder, antisocial personality disorder and a GAF score of 50. (Tr. 354-355). In plaintiff's view, the ALJ's reference in his decision that these consultative examinations were "unremarkable," means that the examinations came back completely normal. (Tr. 22). However, contrary to this conclusion, plaintiff asserts that the combined the consultative examinations concluded that plaintiff had intermittent explosive disorder and antisocial personality disorder. The second consultative examination concludes plaintiff had a poor prognosis and a GAF of 50, which represents a serious impairment in social, occupational, or school functioning. (Tr. 355). Again, plaintiff argues that this is inconsistent with the ALJ's finding that the consultative examinations were "unremarkable."

Plaintiff further argues that the ALJ makes incorrect "assumptions" in his decision by stating that when plaintiff presented in the emergency room in July 2004, she "denied any problems and no abnormal findings were documented" and that when she presented to the emergency room in June 2005, she was "oriented,

alert to time and no abnormal findings were documented." (Tr. 21-22). According to plaintiff, there is "not a scintilla of evidence from the medical records to justify these assumptions" by the ALJ, let alone substantial evidence to justify his conclusions.

According to plaintiff, the ALJ did not take into account all of plaintiff's severe impairments in formulating his hypothetical to the VE. In his RFC determination, the ALJ concluded that plaintiff is limited to routine production and stress and simple job assignments essentially describing unskilled work, but according to plaintiff, he failed to factor into his RFC determination his previous conclusion that plaintiff suffers from intermittent explosive disorder, depressive disorder, or her moderate difficulties with social functioning or moderate difficulty maintaining concentration, persistence, and pace. Plaintiff cites *Walker v. Barnhardt*, 258 F. Supp.2d. 693, 701 (E.D. Mich. 2003), for the proposition that "a hypothetical claimant restricted to simple unskilled work does not accommodate the claimant's severe impairment of depressive disorder." Plaintiff asserts that the ALJ determined that plaintiff had the severe impairments of depressive disorder and intermittent explosive disorder, but failed to accommodate those into his RFC determination. According to plaintiff, the restrictions based on plaintiff's intermittent explosive disorder combined with her moderate restrictions in concentration and social functioning should have been factored in the RFC

determination by the ALJ. The RFC does not take into account plaintiff's serious emotional problems including auditory hallucinations, decreased cooperation, unstable mood/affect, head bangings, and other self-injurious behavior and assaultive behavior. Plaintiff argues that these factors should have been incorporated into the hypothetical rather than the benign limitation of "unskilled work that provided for routine production and stress and simple job assignments." According to plaintiff, the ALJ should have incorporated nonexertional parameters such as limited dealing with co-workers, no contact with the general public, ability to take unscheduled breaks due to panic attacks or emotional liability. The vocational expert agreed that in considering plaintiff's non-exertional limitations, when considered, they would prevent her from doing any jobs in the national economy. (Tr. 397).

      2.     Commissioner's counter-motion for summary judgment

The Commissioner urges the Court to reject plaintiff's contention that the ALJ failed to afford controlling weight to the opinions of plaintiff's treating psychiatrists. According to the Commissioner, the ALJ reasonably weighed all of the record evidence, including the opinion evidence, and substantial evidence supports his RFC finding. The Commissioner argues that, while plaintiff's discusses "treating physicians" in her argument, she fails to cite to a single long-term treating source. Instead, she focuses primarily on treatment notes

relating to short-term hospitalizations. As the regulations set forth, a treating

source's opinion is given greater weight because he or she can provide a detailed,

longitudinal perspective on a claimant's impairment that cannot be obtained from a

brief hospitalization, like the six-day stay at issue here. *See* 20 C.F.R.

§ 404.1527(d)(2). The Commissioner argues that, for background purposes, the

ALJ addressed plaintiff's September 2003 hospitalization in his decision, but he

properly chose not to afford controlling weight to the related findings.

Like the September 2003 notes, Dr. Godwin's notes pre-date plaintiff's

alleged onset date. Moreover, given the short duration of plaintiff's relationship

with Dr. Godwin, the Commissioner asserts that the findings do not reflect a

detailed, longitudinal picture of plaintiff's mental impairments. Additionally, the

ALJ cited to plaintiff's June 2004 discharge report, which discussed plaintiff's

"excellent" response to treatment and the "significant to full improvement"

plaintiff experienced at CFP. (Tr. 21, 246). The ALJ noted that, after inpatient

treatment for less than two months, plaintiff was deemed competent to stand trial.

(Tr. 21). Contrary to plaintiff's contention, the Commissioner asserts that the ALJ

provided an "adequate summation" in his decision regarding the treatment notes at

CFP, which predated plaintiff's alleged onset date.

Plaintiff contends that the ALJ's findings were inconsistent with those of Dr.

Rao's findings from February, 2004. Again, plaintiff refers to a non-treating

source's findings that predated plaintiff's alleged onset date.  Thus, according to the Commissioner, Dr. Rao's opinion was not entitled to controlling weight and the ALJ properly chose not to rely on Dr. Rao's findings.

The Commissioner also urges the Court the reject plaintiff's contention that the ALJ made assumptions not based on the record.  With respect to plaintiff's July 2004 and June 2005 trips to the emergency room, the ALJ relied directly on the hospital notes in reaching this conclusion.  In July 2004, plaintiff visited the emergency room for medication refills of Seroquel and Depakote.  (Tr. 350).  No further information was noted.  (Tr. 350).  In June 2005, plaintiff visited the emergency room for a sexually transmitted disease.  (Tr. 342).  No abnormal mental findings were noted. (Tr. 342).  The Commissioner asserts that plaintiff, herself, fails to point to abnormal findings associated with these hospital visits because she cannot – they did not exist.

Overall, the Commissioner argues that plaintiff fails to paint the full picture of her treatment during the relevant time period before her 22nd birthday.  The Commissioner contends that the relevant evidence failed to illustrate disabling mental impairments.  Specifically the Commissioner points to how plaintiff informed Dr. Badigam, in February 2005, that she did not feel depressed and experienced no manic or hypomanic episodes.  (Tr. 316).  Further, plaintiff reported no obsessions, compulsions, or anxiety attacks and denied hallucinations,

Report and Recommendation
Cross-Motions for Summary Judgment
*Bridges v. Comm'r*; No. 09-10117

delusions, or paranoid or suicidal ideations. (Tr. 315-16). Dr. Badigam assessed a

GAF score of 70, which indicates some mild symptoms, but also showed that

plaintiff generally was functioning pretty well. While plaintiff describes Dr.

Baddigam's February 2005 exam as "conclusory" and unsupported by evidence,

the Commissioner asserts that, as reflected in the ALJ's summary, Dr. Baddigam's

exam was thorough, detailed, and relied on his findings as well as plaintiff's own

reports. (Tr. 22).

A few days later, plaintiff went to an inpatient unit because she felt

depressed and could not find anybody with whom to talk. (Tr. 325-27). Dr.

Ramesh noted that plaintiff's mood was mildly depressed and assessed plaintiff's

GAF to be 60, which indicated moderate limitations. (Tr. 325). Dr. Ramesh

advised plaintiff to stop smoking, using illegal drugs, and drinking. (Tr. 326). He

also stated that plaintiff did not appear to have symptoms great enough to prescribe

antidepressants to risk side effects to her unborn child and she did not meet

inpatient commitment criteria. (Tr. 326). Similar to Dr. Baddigam, Dr. Ramesh

did not indicate that plaintiff had disabling mental limitations.

In April 2005, state agency reviewing physician Dr. Khademian opined that

plaintiff had mild limitations with activities of daily living and maintaining

concentration, persistence, or pace and moderate limitations with maintaining

social functioning. (Tr. 191). Dr. Khademian expressly concluded that plaintiff

seemed capable of performing simple tasks on a regular basis. (Tr. 166). In the view of the Commissioner, Dr. Khademian's opinion directly reflects the ALJ's RFC finding. According to the Commissioner, plaintiff also demonstrated a relatively active level of functioning during the relevant time. In January 2006, she reported that she exercised daily (took walks, played basketball, and lifted weights). (Tr. 141, 147). She also prepared her own meals and did household chores like doing laundry, sweeping, washing dishes, cleaning the bathroom, ironing, and taking out the trash. (Tr. 143). Around the same time, Plaintiff's sister reported that Plaintiff cleaned the house, vacuumed, washed dishes, and did laundry. (Tr. 135).

Even following plaintiff's 22nd birthday (i.e., after the relevant time period), the Commissioner asserts that the record evidence failed to support disabling mental limitations. For example, in February 2006, Dr. Cho described plaintiff's affect as "guarded" with depression. (Tr. 353). And, in March 2006, Dr. Tate opined that plaintiff had only mild limitations with activities of daily living and maintaining social functioning and moderate limitations with maintaining concentration, persistence, or pace. (Tr. 206). Mr. Tate, like Dr. Khademian, concluded that plaintiff was able to perform simple tasks. (Tr. 179). The ALJ noted that his conclusions were consistent with those of Mr. Tate's. (Tr. 23). According to the Commissioner, plaintiff does not point to a single medical source

who opined that plaintiff could not work in the period between mid-2004 (the alleged onset date) and January 5, 2006, or even after her 22nd birthday.  Thus, the Commissioner argues that the ALJ properly assessed, weighed, and discussed in his decision plaintiff's treatment source opinions during the relevant time and the ALJ's RFC was supported by the medical evidence and plaintiff's own testimony. (Tr. 18-24).

The Commissioner also urges the Court to reject plaintiff's contention that the ALJ's RFC was defective because it failed to incorporate Plaintiff's mental limitations.  Specifically, plaintiff argues that the ALJ should have incorporated parameters such as limited dealing with co-workers, no contact with the general public, ability to take unscheduled breaks due to panic attacks or emotional liability.  According to the Commissioner, the record evidence fails to support the need for these limitations.  For example, plaintiff testified that she played basketball and went to church weekly.  (Tr. 137).  Plaintiff also attended community college classes, taking six hours per semester and successfully earning 24 credits.  (Tr. 393).  The Commissioner suggests that these activities required plaintiff to have contact with the general public.  In addition, plaintiff denied having anxiety attacks.  (Tr. 315-16).  And, no source of record opined that plaintiff required unscheduled breaks for any reason.  Thus, the Commissioner

urges the Court to find that the ALJ's RFC was based on substantial evidence in the record.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may...consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*,

Report and Recommendation
Cross-Motions for Summary Judgment
*Bridges v. Comm'r*; No. 09-10117

245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either

the ALJ or the reviewing court must discuss every piece of evidence in the

administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508

(6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

addressing in his written decision every piece of evidence submitted by a party.")

(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,

198 Fed.Appx. 521, 526 (6th Cir. 2006).

    B.    <u>Governing Law</u>

        1.    Burden of proof

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381

*et seq*.).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two: If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits...physical or mental ability to do
> basic work activities," benefits are denied without further
> analysis.
>
> Step Three: If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.
>
> Step Four: If the claimant is able to perform his or her
> past relevant work, benefits are denied without further
> analysis.

> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

2.    Substantial evidence

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

In weighing the opinions and medical evidence, the ALJ must consider relevant factors such as the length, nature and extent of the treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole.  20 C.F.R. § 404.1527(d)(2)-(6).  Therefore, a medical opinion of an examining source is entitled to more weight than a non-examining source and a treating physician's opinion is entitled to more weight than a consultative physician who only examined the claimant one time.  20 C.F.R. § 404.1527(d)(1)-(2).   A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight." Soc.Sec.R. 9602p, 1996 WL 374188, *5 (1996).  The opinion of a treating physician should be given controlling weight if it is "well-supported by medically

acceptable clinical and laboratory diagnostic techniques" and is not "inconsistent

with the other substantial evidence in [the] case record." *Wilson*, 378 F.3d at 544;

20 C.F.R. § 404.1527(d)(2). A physician qualifies as a treating source if the

claimant sees her "with a frequency consistent with accepted medical practice for

the type of treatment and/or evaluation required for [the] medical condition." 20

C.F.R. § 404.1502. "Although the ALJ is not bound by a treating physician's

opinion, 'he must set forth the reasons for rejecting the opinion in his decision.'"

*Dent v. Astrue*, 2008 WL 822078, *16 (W.D. Tenn. 2008) (citation omitted).

"Claimants are entitled to receive good reasons for the weight accorded their

treating sources independent of their substantive right to receive disability

benefits." *Smith v. Comm'r of Social Security*, 482 F.3d 873, 875 (6th Cir. 2007).

"The opinion of a non-examining physician, on the other hand, 'is entitled to little

weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams

v. Massanari*, 55 Fed.Appx. 279, 284 (6th Cir. 2003).

    C.    <u>Analysis and Conclusions</u>

As to an allegedly disabling mental impairment, the Commissioner has

promulgated a special technique to ensure that all evidence needed for the

evaluation of such a claim is obtained and evaluated. This technique was designed

to work in conjunction with the sequential evaluation process set out for the

evaluation of physical impairments. 20 C.F.R. §§ 404.1520a, 416.920a. Congress

laid the foundation for making disability determinations when mental impairments

are involved in 42 U.S.C. § 421(h), which provides:

> An initial determination under subsection (a), (c), (g), or
> (I) of this section that an individual is not under a
> disability, in any case where there is evidence which
> indicates the existence of a mental impairment, shall be
> made only if the Commissioner has made every
> reasonable effort to ensure that a qualified psychiatrist or
> psychologist has completed the medical portion of the
> case review and any applicable residual functional
> capacity assessment.

Section 404.1520a explains in detail the special procedure and requires the

completion of "a standard document outlining the steps of this procedure." 20

C.F.R. § 404. 1520a(d). The regulation further requires the standard document to

be completed and signed by a medical consultant at the initial and reconsideration

levels, but provides other options at the administrative law judge hearing level. *Id.*

Under this procedure, the Commissioner must first make clinical findings, as to

whether the claimant has a medically determinable mental disorder specified in one

of eight diagnostic categories defined in the regulations. *Merkel v. Comm'r of

Social Security*, 2008 WL 2951276, *10 (E.D. Mich. 2008), citing, 20 C.F.R. Pt.

404. Subpt. P, App. 1, § 12.00A.

The Commissioner must then measure the severity of any mental disorder;

that is, its impact on the applicant's ability to work. "This is assessed in terms of a

prescribed list of functional restrictions associated with mental disorders." *Merkel*,

at *10, citing, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00C. The first area of functional restriction is "activities of daily living." This area requires the Commissioner to determine the claimant's ability to clean, shop, cook, take public transportation, maintain a residence and pay bills. *Merkel*, at *10. Under the second functional area, "social functioning," the Commissioner must determine whether the claimant can interact appropriately and communicate effectively and clearly with others. *Id*. The third functional area, "concentration, persistence, or pace," refers to the claimant's ability to sustain focused attention sufficiently long to permit the timely completion of tasks found in work settings. *Id*. The final functional area, that of "deterioration or decompensation in work or work-like settings," refers to the claimant's ability to tolerate increased mental demands associated with competitive work. *Id*.

The degree of limitation in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace) is rated using a five-point scale: None, mild, moderate, marked, and extreme. *Pauley v. Comm'r of Social Security*, 2008 WL 2943341, *9 (S.D. Ohio 2008). The degree of limitation in the fourth functional area (episodes of decompensation) is rated using a four-point scale: None, one or two, three, four or more. *Id*. "The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity." *Pauley*, at *9, citing, 20 C.F.R. § 404. 1520a(c)(4).

Ratings above "none" and "mild" in the first three functional areas and "none" in the fourth functional area are considered severe. *Pauley*, at *9, citing, 20 C.F.R. § 404. 1520a(d)(1). If the first two functional areas receive ratings of "none" or "slight," the third a rating of "never" or "seldom," and the fourth a rating of "never," the Commissioner will conclude that the mental impairment is not severe, and that it cannot serve as the basis for a finding of disability. *Merkel*, at *10, citing, 20 C.F.R. §§ 404.1520a(c)(1), 404.1521.

If the functional areas indicate that the mental impairment is "severe," the Commissioner must decide whether it meets or equals a listed mental disorder. *Merkel*, at *10, citing, 20 C.F.R. § 1520a(c)(2). The Commissioner will determine that the claimant is disabled if the mental impairment is a listed mental disorder and at least two of the criteria have been met. *Merkel*, at *10, citing, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.02, *et. seq.* If the severe mental impairment does not meet a listed mental disorder, the Commissioner must perform a residual functional capacity assessment to determine whether the claimant can perform some jobs notwithstanding his mental impairment. *Merkel*, at *10, citing, 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

The ALJ concluded that, while the medical evidence substantiates the presence a depressive disorder and an intermittent explosive disorder (paragraph "A" criteria), plaintiff's mental impairments did not meet the paragraph "B"

criteria of any listing within section 12.00.  In making this finding, the ALJ considered whether the "paragraph B" criteria were satisfied.  As noted by the ALJ, to satisfy the "paragraph B" criteria, the mental impairment must result in at least two of the following:  marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.  The ALJ concluded that plaintiff had "mild" restrictions of activities of daily living, "moderate" difficulties in maintaining social functioning; "moderate" difficulties in maintaining concentration, persistence, or pace; and one episode of decompensation.  Because her mental impairment did not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, the ALJ concluded that the "paragraph B" criteria were not satisfied.  The ALJ also considered whether the "paragraph C" criteria were satisfied, and concluded that the evidence failed to establish the presence of the "paragraph C" criteria.  The ALJ concluded that, although substance abuse disorders are included in the listings, substance abuse alone cannot be the basis for a finding of disability under listing 12.09 and an individual must establish another listing level impairment for substance abuse to be considered a disabling impairment.  Since plaintiff's impairments did not meet any listed impairment, the ALJ concluded that the requirements of 12.09 were not met.

In considering plaintiff's symptoms, the ALJ followed a two-step process in which it must first be determined whether there are underlying medically determinable physical or mental impairments–i.e., impairments that can be shown by medically acceptable clinical and laboratory diagnostic techniques–that could reasonably be expected to produce plaintiff's or other symptoms. Second, once it is shown that underlying physical or mental impairments could reasonably be expected to produce plaintiff's pain or other symptoms, the intensity, persistence, and limiting effects of plaintiff's symptoms must be evaluated to determine the extent to which they limit plaintiff's ability to do basic work activities.

The ALJ examined the medical records presented in detail. The records showed that plaintiff received inpatient psychiatric treatment for depression, after a suicide attempt at the age of 12. Years later, in September 2003, plaintiff presented to the emergency room with reports of auditory and visual hallucinations. It was noted that she was very uncooperative, and it was unclear whether her behavior was primarily due to a personality disorder and substance abuse, or a bipolar disorder. Plaintiff was admitted to the psychiatric ward for treatment, and on discharge six days later she was diagnosed with psychosis, NOS, nicotine dependence, alcohol and ecstasy abuse and a global assessment of functioning (GAF) rating of 35, which according to the Diagnostic and Statistical

Manual of Mental Disorders IV (DSM-IV), represents a major impairment in functioning.

Six months later, in March 2004, plaintiff assaulted a prison employee while incarcerated and was charged with criminal assault. She was referred to the Center for Forensic Psychiatry and it was recommended that she was incompetent to stand trial. In April 2004, during a psychiatric admission exam, she denied any suicidal thoughts, and cognitively, she appeared alert and oriented to her surroundings and her memory appeared intact for recent and remote recall, though her judgment appeared impaired. After inpatient treatment for less than two months, she was determined competent to stand trial. It was noted that her treatment response during the hospitalization was "excellent" and there was "a significant to full improvement, remission, and/or stabilization of many, most, or all of the psychotic, mood, affect, insight, behavioral, and/or other psychiatric symptoms, problems, features, and/or disturbances." She remained free of any major behavioral problems for approximately 47 days of the hospitalization. She also maintained independence and was able to adequately take care of her basic self care, and she remained entirely compliant with prescribed medication. Moreover, plaintiff denied any disturbances of attention, concentration, memory or interests, her thought processes were without any abnormalities and were entirely coherent, relevant, goal directed, and well-focused. She was given a diagnosis of

schizoaffective disorder, rule out bipolar disorder, rule out schizophrenia and discharged June 11, 2004 with a prescription for Seroquel and Depakote. Based on the foregoing, the ALJ concluded that, despite the exacerbation in her mental status, with proper treatment, plaintiff was able to return to a baseline level of functioning within a 12 month period and since then has not required any long-term inpatient hospitalizations for her mental problems. Moreover, the ALJ noted evidence that throughout the relevant time period plaintiff had not been entirely compliant in taking her prescribed medications, which suggests that the symptoms may not have been as limiting as she has alleged and, as often than not, her hospital emergency room visits corresponded to noncompliance or a request for medication refill.

In July 2004, claimant presented to the emergency room, asking for a prescription for Seroquel, stating that she ran out three weeks prior, and she reported she was almost out of the Depakote. Even so, she denied any problems and no abnormal findings were documented. On February 28, 2005, plaintiff was hospitalized for one day with complaints of depression while acknowledging that two weeks prior she started smoking crack cocaine and used ecstasy, even though she was eight weeks pregnant. It was noted that her mood was mildly depressed, she was not suicidal or homicidal, her intelligence was average and her insight and judgment were poor. Further, she did not appear to have symptoms significant

enough to prescribe antidepressant medications to risk side effects on the child and she was recommended for outpatient supportive psychotherapy. She was discharged with a diagnosis of an adjustment disorder with depressed mood, poly-substance abuse (marijuana, cocaine, ecstasy) and a GAF of 60, which indicates moderate limitation in functioning.

In June 2005, plaintiff presented to the emergency room after she ran out other medications for one day. It was noted she was oriented, alert to time and no abnormal findings were documented. She was discharged the same day with a prescription.

In May 2006, she reported she had not taken her medication since her last hospitalization in 2005. She stated that she felt she was in need of medications, but wanted to wait until after the baby was born and she reported she had not used alcohol, marijuana or ecstasy in the last year. She was diagnosed with a mood disorder, NOS, rule out bipolar, mixed and provided a referral for treatment, but not prescribed medication. Based on the foregoing medical records, the ALJ concluded that the evidence suggested that, throughout the relevant time period plaintiff received essentially routine and/or conservative treatment for her allegedly disabling mental impairments. Moreover, the ALJ also noted that, given her allegations of totally disabling symptoms, there should be some indication in the treatment records of restrictions placed on her by a treating doctor. Yet, a

review of the record in this case reveals no restrictions recommended by any treating doctor. In fact, the ALJ pointed out that the record does not contain any opinions from treating or examining physicians indicating that she is disabled or even has limitations greater than those determined by the ALJ. Thus, the ALJ concluded that plaintiff's treatment history diminished the overall persuasiveness of her subjective complaints and alleged limitations.

Based on the foregoing, the undersigned suggests that the ALJ's analysis of the medical evidence was thorough and his decision is supported by the substantial evidence in the record. " As set forth in the regulations, a treating physician is a medical professional that is "able to provide a detailed, longitudinal picture of [the claimant's] medical impairments ... [that] cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2). "A physician qualifies as a treating source if the claimant sees her with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." *Cruse v. Comm'r Soc. Sec.*, 502 F.3d 532, 540 (6th Cir. 2007). Despite plaintiff's claims that she regularly treated with a psychiatrist and a therapist, no such documentation is contained in the administrative record. And, while plaintiff suggests that the physicians who treated her during her hospitalizations should be given "treating physician" status,

she offers no supporting authority for her position and there is no evidence in the record to suggest that these physicians treated her outside the scope of her hospital stays.

To the extent that plaintiff points to other subjective limitations, such subjective evidence is only considered to "the extent [it] can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Ditz v. Comm'r of Soc. Sec.*, 2009 WL 440641, *10 (E.D. Mich. 2009), citing, 20 C.F.R. § 404.1529(a), *Young v. Secretary*, 925 F.2d 146, 150-51 (6th Cir. 1990); *Duncan v. Sec'y*, 801 F.2d 847, 852 (6th Cir. 1986). In this case, there is no such evidence and the ALJ's RFC finding was entirely consistent the medical evidence in the record. Indeed, plaintiff's claim of additional restrictions and limitations seems based on the mere existence of her condition, rather than on any resulting impairments or specific restrictions. While the record reveals that plaintiff's condition resulted in several limitations, as found by the ALJ, the mere existence of mental condition is insufficient to establish an inability to work. *See e.g.*, *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) (The residual functional capacity circumscribes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from-though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities."); *Yang v. Comm'r of Soc. Sec.*, 2004 WL 1765480, *5 (E.D. Mich. 2004) ("A claimant's

severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other."); *Griffeth*, 217 Fed.Appx. at 429 ("The regulations recognize that individuals who have the same severe impairment may have different residual functional capacities depending on their other impairments, pain, and other symptoms.").

Given that a severe impairment does not equate to disability, the undersigned suggests that the ALJ's decision to find plaintiff's claimed limitations to be only partially credible is supported by the substantial evidence in the record and properly incorporated into the RFC finding. The ALJ's obligation to assess credibility extends to the claimant's subjective complaints such that the ALJ "can present a hypothetical to the VE on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate." *Jones*, 336 F.3d at 476. When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility."); *Krupa v. Comm'r of Soc. Sec.*, 1999 WL 98645, *3 (6th Cir. 1999). An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). "The rule that a hypothetical question must incorporate all of

the claimant's physical and mental limitations do not divest the ALJ of his or her obligation to assess credibility and determine the facts." *Redfield v. Comm'r of Soc. Sec.*, 366 F.Supp.2d 489, 497 (E.D. Mich. 2005). The ALJ is only required to incorporate the limitations that he finds credible. *Casey*, 987 F.2d at 1235. This obligation to assess credibility extends to the claimant's subjective complaints such that the ALJ "can present a hypothetical to the VE on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate." *Jones*, 336 F.3d at 476. An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

The ALJ found that the medical evidence was not consistent with limitations that would preclude all sustained work activity. He also found that her daily activities were inconsistent with her allegations of disabling levels of depression. On two separate Function Reports completed in 2005 and 2006, plaintiff reported that her condition affected her ability to care for her personal needs, she needed special reminders to take care of her personal needs and grooming and to take her medicine, and she did not handle stress well. Nonetheless, she acknowledged that she exercised daily, prepared meals, shoveled snow, did laundry, ironed, swept, washed dishes, cleaned the bathroom, took the

garbage out, did household repairs, went outside daily, was able to go outside alone, walked to the store, shopped in stores for clothes, shoes and food, she enjoyed reading, watching television, listening to CDs, she communicated with others over the telephone daily, attended social groups, church and sporting events, and followed written instructions very well. Although in the earlier report plaintiff stated she did not follow spoken instructions well or handle changes in routine well and she did not get along with authority figures, as of 2006 she stated she was able to follow spoken instructions, she handled changes in routine well and she got along well with authority figures. In addition, plaintiff testified that she had attended college since the prior summer, and, as of March 2008, transcripts reveal she completed 24 credit hours. The ALJ concluded that her description of daily activities and capacity for social functioning suggest a greater mental capacity than that alleged by plaintiff at the hearing and is inconsistent with her testimony that she does nothing all day but lay in bed and on the couch. Finally, the ALJ noted that a review of plaintiff's work history shows that she has worked sporadically and it does not suggest a strong motivation for regular employment, even prior to the alleged onset date, which does not bolster her credibility. The undersigned finds no basis to disturb the ALJ's credibility findings.

Based on the foregoing evidence, the ALJ concluded that there was no indication in the record to support a finding of more than a mild limitation in the area of daily activities, moderate limitations in the areas of social functioning and concentration, persistence or pace and one episode of decompensation. Further, the ALJ concluded that these limitations could reasonably be accommodated by the residual functional capacity, which restricted plaintiff to unskilled work that involves routine production and stress and simple job assignments. Weighing all relevant factors, the ALJ concluded that plaintiff's subjective complaints did not warrant any additional limitations and that his conclusions were consistent with the findings of the State agency psychologist, who reviewed the documentary record at the initial level of administrative review and came to the conclusion that plaintiff was able to perform simple tasks.

Contrary to plaintiff's assertions, the undersigned suggests that the ALJ's RFC findings follow the opinions of the vocational expert which came in response to proper hypothetical questions that accurately portrayed plaintiff's individual physical and mental impairments in harmony with the objective record medical evidence. *See Griffeth*, 217 Fed.Appx. at 429; *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). Plaintiff argues that the ALJ should have incorporated nonexertional parameters such as limited dealing with co-workers, no contact with the general public, ability to take unscheduled breaks

due to panic attacks or emotional liability.  The undersigned suggests that the ALJ thoroughly analyzed whether there was any support in the record for further limiting plaintiff.  Given her reported level of activity, the accommodation of her mental impairments in the RFC, and the lack of any restrictions imposed by a treating physician, the undersigned suggests that the ALJ's RFC finding is supported by the substantial evidence in the record.  Thus, the undersigned finds no basis to disturb the conclusions of the ALJ.

After review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## IV.   RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that plaintiff is not disabled. Accordingly, it is **RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED**, defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Administrative Order 09-AO-042. The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

|  |  |
|---|---|
|  | s/Michael Hluchaniuk |
| Date: February 23, 2010 | Michael Hluchaniuk |
|  | United States Magistrate Judge |

# CERTIFICATE OF SERVICE

I certify that on <u>February 23, 2010,</u> I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Kenneth L. Shaitelman, AUSA, Joshua L. Moore, and the Commissioner of Social Security</u>.

s/Darlene Chubb
Judicial Assistant
(810) 341-7850
darlene_chubb@mied.uscourts.gov
